**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>    **v.**<br><br>**SAVON BLANCHARD**<br>**aka SAVON LEE BLANCHARD,**<br><br>    **Defendant.** | **Case No. 1:26-MJ-00078** |

**EMERGENCY MOTION TO STAY DEFENDANT'S RELEASE
AND *DE NOVO* REVIEW OF MAGISTRATE JUDGE'S RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order by the Honorable Magistrate Judge Matthew J. Sharbaugh issued on April 22, 2026. On April 22, 2026, Magistrate Judge Sharbaugh denied the government's motion to stay Defendant's release from custody. The Government first requests that the Court stay Magistrate Judge Sharbaugh's order releasing Defendant until this Court schedules a *de novo* hearing on the decision to release. The Government further requests that the Court grant a *de novo* review of Magistrate Judge Sharbaugh's denial of the Government's motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm). This Court has the authority to grant a stay to consider this emergency *de novo* review of the Magistrate Judge's order of release.

Defendant stands before this Court charged with illegally possessing a firearm with thirteen rounds of ammunition, despite having a Manslaughter Involuntary conviction and Use Handgun in Commission of a Crime of Violence conviction in Criminal Circuit Court for Prince George's County, Maryland, under case number CT111129X. In addition, Defendant was convicted of two

1

counts of Conspiracy to Induce False Testimony or Avoidance of Subpoena and Induce False Testimony in Criminal Circuit Court for Prince George's County, Maryland, in case number CT120421A. This prior history of criminal convictions and pending offense puts the community at risk. Pursuant to 18 U.S.C. § 3142(g), the relevant factors support pretrial detention.

### *The Instant Offense*

On Friday, April 17, 2026, at 5:20 p.m., members of the Metropolitan Police Department ("MPD") Robbery Suppression Unit and members of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") (collectively, "Members") were patrolling together in Northeast, Washington, D.C. in both marked and unmarked vehicles.

Members were by the intersection of Nannie Helen Burroughs Avenue NE and Hayes Street NE, Washington, D.C. when they observed Defendant stopped and sitting on a white Yamaha Raptor 700R 4-Wheeler, All Terrain Vehicle ("ATV"), on public space with the engine running. MPD Investigator Vaillancourt proceeded to initiate a traffic stop on the ATV.

Investigator Vaillancourt pulled his marked patrol vehicle in front of the ATV in an attempt prevent the ATV from fleeing. Special Agent Holsomback observed Defendant was attempting to drive the ATV towards Investigator Vaillancourt's driver's side door. Special Agent Smith pulled his ATF vehicle directly behind the ATV.

Defendant then dismounted the ATV and began to flee on foot. Special Agent Holsomback, and other Members ran after Defendant down the sidewalk of Nannie Helen Burroughs Avenue. While pursuing Defendant, Special Agent Perzanoski pursued Defendant several meters behind him and heard the sound of a metal object hitting the sidewalk concrete. Special Agent Perzanoski then observed a black firearm and a magazine with ammunition on the ground in Defendant's flight path. In addition, Special Agent Holsomback, who was the closest

2

behind Defendant, verbally stated "gun," at which time Special Agent Perzanoski stopped pursuing Defendant and collected the firearm, while wearing gloves.

The firearm that was recovered was a black Glock, Model 30s, .45 caliber. In addition, 12 rounds of .45 caliber ammunition were recovered from the magazine and another round of .45 caliber ammunition was recovered on the ground near the firearm.



*Figure 1: The Firearm and Magazine with Slide Pushed Back and Locked After Recovery*

Special Agents Holsomback, Smith, and Sullivan continued to pursue Defendant on foot and eventually apprehended him, taking him into custody without incident. Law enforcement ran a check on the ATV and learned that it had been reported stolen out of Anne Arundel County, Maryland.



*Figure 2: Image of Stolen ATV*

Law enforcement subsequently obtained CCTV footage showing Defendant tossing the firearm while ATF agents were in pursuit. The CCTV footage shows Defendant discarding the firearm from his person as he runs from law enforcement, then sliding on the concrete sidewalk.



*Figure 3: Defendant in Red and the Firearm in Yellow*

### *Defendant's Criminal History*

A criminal history check showed that Defendant was previously convicted in Prince George's County, Maryland Circuit Court, case number CT111129X[1], of Manslaughter Involuntary and sentenced to 10 years of incarceration with 5 years suspended and 5 years of probation. Within the same case, Defendant was also convicted of Use Handgun in Commission of a Crime of Violence and sentenced to 20 years' incarceration with 15 years' suspended.

On December 12, 2012, Defendant was convicted of two counts of Conspiracy to Induce False Testimony or Avoidance of Subpoena and Induce False Testimony in Criminal Circuit Court for Prince George's County, Maryland, in case number CT120421A. Defendant was sentenced to 5 years' incarceration.

Based on the sentences imposed in his prior cases, Defendant would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was possessing the firearm and ammunition in the instant case.

On April 18, 2026, Defendant was initially charged for the instant conduct in the Superior Court of the District of Columbia in case number 2026 CF2 005838. Specifically, Defendant was charged with Receiving Stolen Property $1,000 or more, Possession of Unregistered Firearm, Carrying a Pistol Without a License (Outside Home or Place of Business), and Unlawful Possession of a Firearm (Prior Conviction). On April 20, 2026, the Government charged Defendant by complaint in the U.S. District Court for the District of Columbia. Defendant was charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime

---

[1] The Pretrial Services Report lists Defendant's prior conviction as "Murder 1st Degree." The government's search of Defendant's criminal history on the state of Maryland's public website lists Defendant's conviction as "Manslaughter Involuntary." Defense counsel proffered at the April 22, 2026, detention hearing that Defendant's conviction is for Involuntary Manslaughter.

Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).  Defendant's proceedings in the Superior Court of the District of Columbia were nolle prossed on April 21, 2026.

## **ARGUMENT**

### I.     **This Court Has the Authority to Grant the Motion to Stay Release Pending a *De Novo* Review**

The power to stay an order of release is directly related to a district court's authority to review a release order of a magistrate judge.  *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) ("given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory.").  An alternative interpretation would risk allowing the charged defendant the opportunity to "harm[] the community or disappear[] by the time the district court's ruling is rendered and detention is ordered" if the district court determines to order the defendant detained. *Id.*; *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 494 (W.D. Tex. 2022); *United States v. Rosales-Villegas*, No.: 2:23-cr-00044-GMN-VCF, 2023 U.S. Dist. LEXIS 59776, at *5-6, 7 n.1 (D. Nev. Apr. 4, 2023) ("The Court's decision is also based on unanimous caselaw.  As the Government notes, "stays of release are so commonplace and uncontroversial that they are often relegated to a sentence or two in the procedural history of an opinion on the merits of the detention decision. (Resp. 3:9-24) (collecting cases).  Here, the Court is guided by the practical considerations underlying the issuance of a stay as well as caselaw within the Ninth Circuit routinely authorizing stays.").

The government is aware of the Honorable Magistrate Judge Zia M. Faruqui's recent decision denying a motion to stay in *United States v. Abass*, 25-CR-00079 (TSC), ECF No. 12 (April 11, 2025).  Judge Faruqui indicated that although magistrate courts typically suspend an

order of release pending the government's request for *de novo* review of the Magistrate Judge's release order, that the Court would no longer do so under the four factors articulated in *Nken v. Holder*, 556 U.S. 418 (2009).  The government, however, is not seeking an extraordinary length of time in which to have the Court consider the merits of a stay which will require significant, detailed briefing, but rather, an emergency stay to present the merits of the requested detention to the district court judge.

Thus, the government seeks a brief administrative stay of the order of release, and as such, the request should not be analyzed under the *Nken* factors.  As this Circuit has noted, "[t]he purpose of [this] administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal."  *Cobell v. Norton*, No. 03-5262, 2004 WL 603456, at *1 (D.C. Cir. Mar. 24, 2004).  Such a stay, as the Supreme Court noted recently in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), "buys the court time to deliberate" and does not "typically reflect the court's consideration of the merits." *Id.* at 798 (Barret, J., concurring). District courts have recognized that administrative stays are also applicable in seeking emergency relief, including in the District of Columbia.  *See, e.g.*, *Dellinger v. Bessent*, 2025 WL 450488 (D.D.C. Feb. 10, 2025); *National Council of Nonprofits v. Office of Management & Budget*, 2025 WL 314433 (D.D.C. Jan. 28, 2025); *Order, Texas v. Department of Homeland Security*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024).  As these courts have recognized, the "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Dellinger*, 2025 WL 450488 (quoting *Order, Texas,* No. 24-CV-306, at 2).

## II.     *De Novo* **Review of the Magistrate's Release Order**

As an initial matter, a defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as

7

required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1).  The

government must establish by clear and convincing evidence that a defendant is a danger to the

community.  *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988).  In contrast, "[a]

determination that an individual is a flight risk must be supported by a preponderance of the

evidence."  *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

Further, Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release
> . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the

magistrate judge's denial of pre-trial detention.  In its discretion, the Court may proceed to rehear

the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer

and argument.  It may take additional evidence from new witnesses or consider arguments not

previously raised.

In short, the Court may proceed as best enables it to resolve the question posed: whether

any condition or combination of conditions will reasonably assure the appearance of the person

as required and the safety of any other person and the community.  As the legislative history of

the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News

3182, 3195-3196.[2]

There are four factors under Section 3142(g) that the Court should consider and weigh in making a determination whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the defendant's appearance at future proceedings.

**A.     The Nature and Circumstances of this Offense Merit Detention.**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. Defendant is charged with a serious offense carrying a significant penalty. For violating 18 U.S.C. § 922(g), Defendant faces a maximum sentence of up to 15 years

---

[2] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

of imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, the evidence shows that law enforcement attempted to conduct a vehicle stop of Defendant while he operated an ATV on a public space. The defendant attempted to flee and drove the ATV he was operating into the driver-side wheel well of a marked MPD vehicle. Defendant jumped off of the ATV and fled on foot from law enforcement after hitting the MPD vehicle. During the foot pursuit, Defendant discarded a black Glock, Model 30s .45 caliber firearm from his person on to the sidewalk. Law enforcement observed the black firearm and a magazine with ammunition on the ground in Defendant's flight path. Special Agent Holsomback, who was the closest behind Defendant, verbally stated "gun" at which time Special Agent Perzanoski stopped pursuing Defendant and collected the firearm, while wearing gloves. The firearm that was recovered was a black Glock, Model 30s, .45 caliber. In addition, 12 rounds of .45 caliber ammunition were recovered from the magazine and one round of .45 caliber ammunition was recovered on the ground near the firearm. Law enforcement also discovered that the ATV Defendant drove was reported stolen in Anne Arundel County, Maryland.

In its holding, the Magistrate Court found that though Defendant is charged under 18 U.S.C. § 922(g), and that the offense is of a serious and dangerous nature, Defendant did not use or brandish the firearm against any member of the public. However, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, inherently poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when Defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United*

10

*States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). The firearm recovered from Defendant had many of these troubling characteristics. Particularly, the recovered firearm had 12 rounds that were easily accessible in a 12-round-capacity magazine and one round of ammunition recovered on the ground near the firearm. Simply stated, unlawful gun possession is exceedingly dangerous, especially by someone who has a prior violent felony conviction involving the use of a firearm.

**B.    The Weight of the Evidence Against Defendant Favors Detention.**

The second factor to be considered—the weight of the evidence—also favors detention. The Government's case against Defendant is strong.[3] Law enforcement heard the sound of metal hit the concrete on the sidewalk during their foot pursuit of Defendant. Special Agent Holsomback observed a black firearm and a magazine with ammunition on the ground in Defendant's flight

---

[3] Here, the weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight.

path.

Body camera footage shows Defendant running from law enforcement after officers attempted to initiate a vehicle stop of the ATV. CCTV footage of the officers' foot pursuit of Defendant shows Defendant discarding the Glock, Model 30s, .45 caliber firearm and the firearm hitting the sidewalk concrete. *See* Figure 3, above. CCTV footage also shows Special Agent Perzanoski stopping during the foot pursuit of Defendant to collect the firearm and to prevent a bystander from picking it up. The firearm was recovered by law enforcement within seconds after leaving Defendant's person. "[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. Here, the weight and strength of the evidence increases the prospect that Defendant will present a danger to the community if released.

**C.      Defendant's History and Characteristics Also Favor Detention.**

The third factor, analyzing Defendant's history and characteristics, weighs in favor of detention. The Magistrate Court found that Defendant's criminal history is serious. According to the Pretrial Services Report, Defendant has three prior arrests and two prior convictions.

Defendant's criminal history is violent and troublesome. A criminal history check showed that Defendant was previously convicted in Prince George's County, Maryland Circuit Court, case number CT111129X, of Manslaughter Involuntary and sentenced to 10 years of incarceration with 5 years suspended and 5 years of probation. Within the same case, Defendant was convicted of Use Handgun in Commission of a Crime of Violence and sentenced to 20 years' incarceration with

12

15 years' suspended.  Defendant's probation for this offense is still open and pending due to receiving federal traffic citations.[4]

On March 27, 2026, Defendant pled guilty to Failure to Maintain Registration Plate Free of Foreign Materials and Clearly Legible, in United States District Court for the District of Maryland, case number 8:25-po-04071, and was ordered to pay to $380 in fines and costs.

On December 12, 2012, Defendant was convicted of two counts of Conspiracy to Induce False Testimony or Avoidance of Subpoena and Induce False Testimony in Criminal Circuit Court for Prince George's County, Maryland, in case number CT120421A.  Defendant was sentenced to 5 years' incarceration.

Defendant's criminal history indicates that he has been convicted of killing a member of the community, convicted of using a firearm during the commission of a violent crime, and convicted of intimidating a witness.  The statue of conviction for Defendant's Conspiracy to Induce False Testimony or Avoidance of Subpoena conviction is MD. CODE ANN., Crim. Law § 9-302(a)(2)(ii).  The statute requires that "a person may not harm another, threaten to harm another,

---

[4] The Pretrial Services Report states that Defendant's probation for Defendant's Murder First Degree conviction in Prince George's County, Maryland Circuit Court, case number CT111129X, was expected to expire on June 17, 2025, but remains open and pending due to federal traffic charges.  A search completed by the government found that Defendant received traffic citations in United States District Court for the District of Maryland, case number 8:25-po-04071, for Driving a Vehicle on Highway Without Current Registration Plates and Validation Tabs, Failure of Individual Driving on Highway to Have License with Him, Knowingly Driving Uninsured Vehicle, Driving Vehicle on Highway with Unpaid Registration Fee, Driving Vehicle on Highway with Suspended Registration, and Failure to Maintain Registration Plate Free of Foreign Materials and Clearly Legible.  Defendant pled guilty to Failure to Maintain Registration Plate Free of Foreign Materials and Clearly Legible on March 27, 2026, and was ordered to pay $380 in fines and costs.  At the April 22, 2026, detention hearing Pretrial Services Agency stated Defendant's probation is still considered "open" but Defendant's probation officer will not revoke probation for any new offenses.

13

or damage or destroy property with the intent to induce a victim or witness to be absent from an official proceeding to which the victim or witness has been subpoenaed or summoned."

Defendant's prior convictions relate to the likelihood of danger he poses to the community and his ability to be truthful in a judicial proceeding. Defendant's conduct in the instant offense shows that he has a continued disregard for court orders and law enforcement: he purchased a firearm after sustaining convictions that clearly prohibit him from doing so and then fled from law enforcement when they tried to conduct a traffic stop. Further, this is Defendant's second firearm offense. Defendant's repeated offenses demonstrate that he is no stranger to disregarding court orders. This pattern of conduct underscores Defendant's continued disregard for the law and demonstrates that he cannot be trusted to comply with any conditions of release.

Given this checkered history of compliance with the law, Pretrial Services has noted, and the Government agrees, that no condition or combination of conditions can reasonably assure the Defendant's appearance or safety to the community. Accordingly, this factor weighs heavily in favor of detention.

**D.    Defendant Presents a Danger to Our Community.**

The fourth and final factor—danger to any person or the community posed by Defendant's release—similarly weighs in favor of detention. The D.C. Circuit has noted that "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community," pretrial detention is available to "disable the arrestee from executing that threat." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This factor requires the Court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that the

14

defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Defendant has spent years in jail and additional years on probation. Defendant is aware that he is not permitted to possess or use a firearm due to the same Maryland offenses giving rise to his previous probation. "At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the Defendant presents an extreme safety risk to the public.").

Focusing on the circumstances here and looking forward, Defendant's conduct shows a repeated, flagrant, and unjustifiable disregard for the safety of the community. Defendant's conduct endangered members of the community as he operated a stolen ATV and fled from law enforcement while discarding a firearm from his person in a residential area. Defendant could have mistakenly discharged the firearm, as he had one round of ammunition on the ground near the firearm and 12 rounds of .45 caliber ammunition recovered from the magazine. In addition, Defendant has a 2016 violent felony conviction for Manslaughter Involuntary and Use Handgun in Commission of a Crime of Violence. Defendant has another 2013 conviction for Conspiracy to Induce False Testimony or Avoidance of Subpoena where he induced a victim or witness to be absent from an official proceeding. Defendant's history is an indication of how he would perform on supervision if he were released in the instant matter. Given Defendant's violent criminal history and conviction for inducing a victim or witness to be absent from an official proceeding, his

15

conduct portends continued disregard for court orders.   Accordingly, this factor also favors detention.

### III.   The Magistrate Court's Third-Party Custodian Does Not Mitigate the Danger Posed by Defendant

At the April 22, 2026, detention hearing, the Court heard testimony from Defendant's mother, girlfriend, and cousin. The Government does not contest that the witnesses testified credibly regarding each of their individual intent to comply with the Court's requirement to report any violations of the Defendant's release conditions.   However, the conditions imposed by the Court do not adequately mitigate the danger to the community posed by Defendant.

Defendant was released to his cousin's home with electronic monitoring, home detention, a prohibition on possessing a firearm or other weapon, and a restriction of most visitors coming to the home.  However, Defendant is permitted to be outside of the home for multiple hours every week.   The Court permitted Defendant to go to work from 3:00 p.m. to 11:30 p.m., Monday through Friday.  Defendant is permitted to have his girlfriend and mother visit him at his cousin's home.  Defendant's cousin is at work Saturday through Monday from 6:00 p.m. to 6:00 a.m. every week and will otherwise be at home with Defendant.  However, Defendant will not be home most of this time because he will be at his own job.  These conditions do not mitigate Defendant's risk to the safety of members of the community and reasonably assure Defendant's appearance because his third-party custodian will generally not be in his presence.  Further, and most importantly, these conditions do not inhibit Defendant from retrieving a gun.  It is readily foreseeable how these conditions could be subverted through no fault of the third-party custodian, who is not a law enforcement officer trained to search for firearms, and who would presumably be giving Defendant notice of her arrival prior to doing any search.  Given the allegations in this case and Defendant's

history of violent offenses with a firearm, the Government would submit that this third-party custodian arrangement is not sufficient to mitigate Defendant's dangerousness to the community.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain Defendant pending trial on these charges.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

By:   /s/ Ursula Simmons
Ursula Simmons
NY Bar No. 5816061
Special Assistant United States Attorney
Federal Major Crimes Section
United States Attorney's Office for D.C.
601 D Street NW, Fifth Floor
Washington, D.C. 20530
Ursula.Simmons@usdoj.gov
(202) 809-0787