**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**SAVON LEE BLANCHARD,**<br><br>**Defendant.** | **Crim. Action No.: 1:26MJ78** |

**MR. BLANCHARD'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR A STAY AND APPEAL OF THE MAGISTRATE COURT'S ORDER SETTING CONDITIONS OF RELEASE**

Savon Blanchard, by and through counsel, respectfully opposes the government's request to overturn the Order setting strict conditions of release issued by the Magistrate Court on March 28, 2025, pursuant to the Bail Reform Act, 18 U.S.C. § 3142. He further moves the Court to deny the government's Motion to stay the release order.

**Introduction**

Mr. Blanchard is before the Court charged by complaint with one count of unlawful possession of a firearm. On April 22, 2026, the Magistrate Court conducted a lengthy detention hearing at which three proposed third-party custodians testified. The Court also heard from Pretrial Services, which reported that Mr. Blanchard had been in full compliance with his five-year term of probation in Maryland.[1]

After hearing testimony from Mr. Blanchard's mother, cousin, and partner—all of whom were deemed suitable custodians—the Magistrate Court approved Mr. Blanchard's release to the

---

[1] Pre-Trial Services represented that Mr. Blanchard's probation is "open" but not active due to pending traffic citations. He cannot be revoked or detained when probation is inactive.

custody of his cousin, Takia Felder. The Court imposed strict conditions of release, including GPS monitoring and home detention.

In ordering release, the Magistrate Court specifically found that the government had not met its burden of demonstrating that no combination of conditions could reasonably assure the safety of the community. The Magistrate Court also denied the government's oral motion for a stay.

Mr. Blanchard is 32 years old. Born and raised in the D.C. Metro area, he has been employed at a warehouse for the past five years. While he has a prior manslaughter conviction, he committed that offense when he was a teenager, over 15 years ago. Since his release from prison over five years ago, he has been employed and compliant with conditions of supervision.

The charges in this case stem from a police encounter in which the government alleges Mr. Blanchard possessed a firearm. There is no presumption for detention in this case. This Court should deny the government's Motion for a stay and uphold the reasoned and informed decision of the Magistrate Court to release Mr. Blanchard with strict and tailored conditions.

ARGUMENT

**I.      The government's Motion for a Stay Must be Denied.**

The governing legal standard for a motion for a stay is set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009). *Nken* places the burden on the moving party and sets forth four factors for courts to consider. While *Nken* does not easily translate to release decisions, Judge Faruqui issued a Memorandum Opinion and Order in *United States v. Abbas*, 25-cr-79 (D.C. C. April 11, 2025), ECF 12, analyzing the factors in a similar case. Judge Faruqi noted that the Bail Reform Act and common law do not authorize stays of release orders and applied the *Nken* factors. Application of each of the *Nken* factors show that the government's Motion for a stay must be denied.

2

With respect to the first factor, it is unlikely the government will prevail on the merits. Magistrate Judge Sharbaugh held a three-hour hearing at which he heard from proposed third-party custodians, pre-trial services, and the parties. After the hearing, Judge Sharbaugh made specific and considered findings on the record in support of his decision. He noted that Mr. Blanchard is employed and that his prior offense occurred fifteen years ago when he was a teenager. He also emphasized that Mr. Blanchard was compliant with this five-year term of probation. With respect to the second *Nken* factor, Judge Sharbaugh specifically found no irreparable harm to the government in denying the stay. On the other hand, Mr. Blanchard, who is employed as a warehouse associate stands to lose his job and sole source of income if he remains detained. Finally, as to the fourth factor, the public interest weighs against staying the release order. Mr. Blanchard does not pose an articulable threat to the public's safety. As Judge Faruqi noted, "pre-trial detention comes at a cost. Taxpayers spend over $1 billion annually to jail defendants before trial." *Abbas* Mem. Op. at 12 (internal citations ommitted). Further, as the D.C. Circuit has emphasized recently, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d at 1273 at 1279 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 755). The public interest is best represented by applying the rule of law and the presumption of release, ensuring a society that still upholds laws and celebrates liberty as "the norm." A stay of a carefully considered judicial release order undermines those values.

## II.     Application of the Bail Reform Act

The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95-96 (D.C. Cir. 1987). It requires courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond

unless the government has presented clear and convincing evidence that there are no conditions that will "reasonably assure the appearance of the person as required or . . . the safety of any other person or the community." 18 U.S.C. §§ 3142(b), 3142(f)(2)(B). In other words, "the default position of the law . . . is that a defendant should be released pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

If the case involves a felony that is *not* a crime of violence but that involves the alleged possession of a dangerous weapon, upon motion by the government, the Bail Reform Act requires the court to hold a hearing to determine whether any condition or combination of conditions will reasonably assure the defendant's appearance in court and the safety of persons and the community, 18 U.S.C. § 3142(f)(1)(E); 18 U.S.C. § 3142(f)(2)(A). When imposing a condition, or combination of conditions, the court must select the "least restrictive" conditions. 18 U.S.C. § 3142(c)(1)(B).

There is no rebuttable presumption of detention for Mr. Blanchard and so the presumption is rather that he should be released. The government bears the burden of persuasion. In determining whether the government has met its burden of persuasion by clear and convincing evidence proving that no combination of condition*s* can protect a person or the community, or by a preponderance of evidence that no combination of conditions can assure the defendant's appearance, courts consider four factors: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence; (3) the defendant's character, including his physical and mental condition, family and community ties, past conduct, drug and alcohol abuse, and criminal history;

and (4) the nature and seriousness of the danger posed to any person by release. 18 U.S.C. § 3142(g).  It is to those factors that the defense now turns.[2]

### A.  Mr. Blanchard's history and characteristics

Savon Blanchard is 32 years old. He was born and raised in Maryland. His mother raised him and his two siblings as a single parent. Mr. Blanchard's father has been incarcerated since Mr. Blanchard was a baby.  When Mr. Blanchard was just a teenager, he was involved in an altercation in which other young men had guns. Tragically, another young man was killed. Mr. Blanchard was initially charged with murder but when the facts and circumstances supported an imperfect self-defense, he was convicted of involuntary manslaughter and sentenced to ten years.

While serious, the Court should consider that Mr. Blanchard's prior serious offense occurred when he was a teenager. His youth at the time bears on his culpability because "there is a growing recognition that people may not gain full reasoning skills and abilities until they reach age 25 on average."[3] Studies on brain development in adolescents by the National Institutes of Health show that the prefrontal cortex, the "executive" part of the brain important for controlling reason, organization, planning, and impulse control, does not fully mature until the early twenties.[4] The same National Institutes of Health study showed that the region of the brain that inhibits risky behavior is not fully formed until age 25.[5] Because the prefrontal cortex is still developing,

---

[2] Because the government did not argue risk of flight as a basis for detention, the defense will not address that issue herein. Indeed, Judge Sharbaugh specifically found that the government had not advanced any "full throated" argument that Mr. Blanchard poses a risk of flight.

[3] USSC, Youthful Offenders in the Federal System, Fiscal Years 2010 to 2015 (2017),https://www.ussc.gov/sites/default/files/pdf/research-andpublications/research-publications/2017/20170525_youthful-offenders.pdf.

[4] Jay N. Giedd, *Structural Magnetic Resonance Imaging of the Adolescent Brain*, 1021 Annals N.Y. Acad. Science 105-09 (June 2004).

[5] Elizabeth Williamson, *Brain Immaturity Could Explain Teen Crash Rate*, WASHINGTON POST, Feb. 1, 2005, at A01.

teenagers and young adults often rely on a region of the brain called the limbic system to make decisions and solve problems. The limbic system is associated with emotions, impulses, aggression, and instinctive behavior–trademark characteristics of young people's interactions with their surroundings.[6] Mr. Blanchard's prior and limited record should be viewed in the context of his youth the well-established impact of ongoing brain development at the time of the offense.

During his sentence, Mr. Blanchard earned his GED.  He was released over five years ago and adjusted admirably. As soon as he was released, he got a job immediately. He has had steady employment and housing and has the support of his proposed third party custodian, mother, and partner.

###     B.     Nature and Circumstances of the Offense and the Weight of the Evidence.

The government alleges that on April 17, 2026, Mr. Blanchard was observed on an ATV. When police first noticed him, he did not appear to be engaged in criminal activity. Yet, officers pulled in front of him to initiate a stop. Mr. Blanchard allegedly fled and officers claim he tossed a firearm. Mr. Blanchard is charged by complaint with one count of possession of a firearm, in violation of 18 U.S.C. § 922(g).

Possessing a weapon and having the status as a felon is not a crime of violence. *United States v. Gloster*, 969 F. Supp. 92, 98 (D.D.C. 1997)("[n]either the act of possessing a weapon nor the fact of being a felon is in itself a crime of violence"); *see also Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (J. Thomas, concurring) ("Under conventional principles of interpretation and our precedents, the offense of unlawfully possessing a short-barreled shotgun does not constitute a "violent felony" under the residual clause of the Armed Career Criminal Act

---

[6] Mariam Arain et al., *Maturation of the Adolescent Brain*, Neuropathic Disease Treatment, NAT'L CENTER FOR BIOTECHNOLOGY INFORMATION AT U.S. NAT'L LIBRARY OF MEDICINE 9: 449–461, 451, 453-54 (2013).

(ACCA)."). Furthermore, "possession of a gun can be entirely innocent." *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019). "[T]hat an item is 'dangerous,' in some general sense, does not necessarily suggest, as the Government seems to assume, that it is not also entirely innocent. Even dangerous items can, in some cases, be so commonplace and generally available that we would not consider them to alert individuals to the likelihood of strict regulation." *Staples v. United States*, 511 U.S. 600, 611 (1994). The nonviolent nature of 922(g)(1) offenses may explain why this Court has released several people facing 922 (g)(1) charges from pretrial detentions, even those with serious prior offenses.

Recently, for example, this Court affirmed the release of a defendant charged with 922(g) who had a prior manslaughter conviction. *United States v. Horace Clark*, 1:26MJ68. Release has likewise been affirmed where defendants charged with gun possession have allegedly fled the police or were alleged to have been noncompliant with supervision. For example, Judge Walton upheld the release of a defendant with a prior gun possession from 2016. After a high-speed chase down 295, police allegedly recovered two guns and crack cocaine in the defendant's car. *United States v. William Hall*, 25CR334.[7] Judge Moss recently upheld release in a case where the defendant allegedly possessed a loaded gun with 14 rounds in the chamber and had four prior convictions including possession of firearms and robbery. This defendant had a history of noncompliance with supervision. *United States v. Bryan Nelson*, 25CR97. Likewise, Judge Jackson upheld release in a case where the defendant was observed awkwardly holding his groin area where a gun was later recovered and attempted to flee from police when they approached. *United States v. Davon Sargent*, 24CR447.

---

[7]Judge Walton upheld the Magistrate Court's Release Order. Following noncompliance (marijuana use), Mr. Hall was ordered detained.

**C. The nature and seriousness of the danger posed by the person to any person in the community if he is released**.

The government cannot meet its heavy burden of proof by simply alleging that Mr. Blanchard is a dangerous person or pointing to the allegations against him. For pretrial detention to be consistent with the Due Process Clause, the government must prove "by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community" and that pretrial detention is necessary to "disable the arrestee from executing that threat." *United States v. Munchel*, 991 F.3d 1273 at 1280 (D.C. Cir. 2021)(emphases in original) (quoting *Salerno,* 481 U.S. at 751). Here, pretrial detention is not necessary to "disable" Mr. Blanchard from carrying out an "identified and articulable threat" to either a specific person or the larger community.

### Conclusion

For the reasons herein and any others that appear to the Court to deny the government's Motion for a Stay of the Magistrate Court's Order setting conditions of Release and to uphold the informed and considered decision of the Magistrate Court.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER
_____/s/_____
ELIZABETH MULLIN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500